WEEKS *v.* WEEKS.

4-8067                                    199 S. W. 2d 955

Opinion delivered February 17, 1947.

Rehearing denied March 17, 1947.

*Buzbee, Harrison & Wright,* for appellant.

*Donham, Fulk & Mehaffy,* for appellee.

HOLT, J. This action was brought for a construction of the will of F. G. Weeks, which contained the following provisions: "1. I hereby direct that all my just debts,

including funeral expenses, be paid out of my estate before the payment of any bequests. 2. It is my will and desire, and I hereby direct, that my body be embalmed and buried in accordance with my station in life.

"3. I give and bequeath to my daughter, Helen Louise Weeks, now living in Kiel, Wisconsin, United States Liberty Bonds of the par value of three thousand dollars ($3,000), said Liberty Bonds to be assigned and delivered to my said daughter as follows: Five hundred dollars ($500) par value as soon after my decease as may be convenient and practicable and the sum of fifty dollars ($50) or its equivalent in Liberty Bonds each and every succeeding month thereafter until the entire amount of three thousand dollars shall have been paid; and to carry out the foregoing I direct my executrix hereinafter named to set apart enough Liberty Bonds as soon after my decease as practicable and I further direct that the interest that shall accrue on said bonds so set aside shall be paid to the said Helen Louise Weeks.

"4. I give and bequeath to my son, Marvin F. Weeks, now living at Lansing, Michigan, United States Liberty Bonds of the par value of three thousand dollars ($3,000), said Liberty Bonds to be assigned and delivered to my said son as follows: Five hundred dollars ($500) par value as soon after my decease as is convenient and practicable, and fifty dollars ($50) par value on each and every succeeding month thereafter until the entire amount of three thousand dollars shall have been paid; and to carry out this bequest I direct my executrix to proceed as set out in paragraph three above, it being my will that the said Marvin F. Weeks shall have and receive all interest that shall accrue on the said bonds set apart for him.

"5. I give and bequeath unto my beloved wife, Louise McGie Weeks, all the rest, residue and remainder of my estate of whatever kind or nature and wherever located or situate, real, personal or mixed, to have and to hold for her own personal use so long as she shall live, and at her death I direct that whatever remains of said bequest

be divided between my son, Marvin F. Weeks, and my daughter, Helen Louise Weeks, share and share alike.

"6. I hereby nominate and appoint my wife, Louise McGie Weeks, executrix of this my last will and testament and direct that she serve without bond.

"In witness whereof, I have hereunto set my hand this 5th day of May, 1925. (Signed) F. G. Weeks."

Appellant made the will a part of her complaint and alleged that each of the bequests of $3,000 in United States Liberty Bonds to Helen Louise Quaid and Marvin F. Weeks had been paid and these bequests fully discharged and that under the terms of said will plaintiff was entitled to receive and to have and to hold for her own personal use, so long as she may live, all of the rest and residue of the estate of the said F. G. Weeks; that under the terms of said will, Helen Louise Weeks Quaid and Marvin F. Weeks have only a contingent interest in as much of said residue as remains at the death of plaintiff.

She prayed "for an order of this Court construing the will of the said F. G. Weeks to mean that plaintiff (appellant) is entitled to receive and to have and to hold for her own unrestricted personal use, so long as she may live, all of the rest, residue and remainder of the estate of the said F. G. Weeks beyond the bequests to the said Marvin F. Weeks and Helen Louise Weeks Quaid, and that she be authorized to have any securities owned by F. G. Weeks at the time of his death transferred to her individually and to fully receipt for such securities."

In their answer, appellees alleged that under paragraph 5 of the last will and testament of F. G. Weeks all of the property of said deceased, real, personal and mixed, was bequeathed to them, share and share alike, subject to a life estate in the plaintiff, and their prayer was "that plaintiff be required to file in this proceeding a statement listing and describing the real and personal property of which F. G. Weeks died seized, and upon

final hearing hereof that title to said property be ad-judged to be in the defendants, share and share alike, subject to a life estate in the plaintiff, and for all proper relief."

Upon a hearing, the trial court found: "That under paragraph 5 of the last will and testament of F. G. Weeks, deceased, the plaintiff, Louise McGie Weeks, was bequeathed a life estate in the real and personal property owned by said deceased at the time of his death, remaining after payment of the bequests contained in paragraphs 3 and 4 of said will, and that the defendants, Marvin F. Weeks and Helen Louise Weeks Quaid, were bequeathed the remainder in fee subject to the life estate of the plaintiff.

"The Court further finds that the plaintiff has in her possession the following described property owned by the deceased, F. G. Weeks, at the time of his death, to-wit: Port of New York Authority Bonds, Series E, No. 16303, par value $1,000, No. 16304, par value $1,000. State of Missouri Bonds, Series H, No. 5918, par value $1,000, No. 5919, par value $1,000, No. 5920, par value $1,000. Missouri Road Bonds, Series G, No. 1149, par value $1,000, No. 6910, par value $1,000. City of Detroit Utility Bonds, No. 4827, par value $1,000. Certificate No. 2743, Jefferson Hotel Corporation Stock. Lot 14, Glenwood Addition, Rock Island, Illinois. Lots 19 and 20, New Shop Addition, East Moline, Illinois," and decreed that the plaintiff, Louise McGie Weeks, "has a life estate in the foregoing described property and all other property which she has in her possession coming into her hands under the last will and testament of F. G. Weeks, deceased, and that she shall receive the income from such property for and during her natural life and upon the death of said Louise McGie Weeks, that title in fee to said property in the hands of Louise McGie Weeks coming to her under the last will and testament of F. G. Weeks, deceased, shall be vested in the defendants, Marvin·F. Weeks and Helen Louise Weeks Quaid, share and share alike."

From the decree comes this appeal.

In interpreting and construing a will, there are some well established rules of construction to guide us. This court said in *Webb* v. *Webb,* 111 Ark. 54, 163 S. W. 1167: "As to the effect and operation of a will, as a general rule, in the absence of language showing a contrary intention, it speaks from the death of the testator. But when the purpose is to ascertain what the intention of the testator was from the construction of the language used by him in the will, then the will should be construed as of the date of its execution," and in *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20, said: "The primary rule of construction in the interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed. *Bloom* v. *Strauss,* 73 Ark. 56, 84 S. W. 511; and *Colton* v. *Colton,* 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138."

It would be difficult, if not impossible, to find two wills worded exactly alike. Each must be interpreted according to its particular wording, in the light of the conditions and circumstances surrounding the testator when he made the will, and in arriving at his intention, we attempt to place ourselves as nearly as possible in the position of the testator at the time of its execution.

On the record presented, we are unable to distinguish the present case in principle from *Johnson* v. *Lehr,* 192 Ark. 1004, 96 S. W. 2d 20, which, we think, is controlling. The will in that case was almost identical in wording, and in all respects similar in effect to the one presented here. There the will provided: "After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Maude Taylor Williams, all of my property, both personal and real, wherever situated or located for her own personal use as long as she may live and at her death should there be any property or moneys

left after the payment of her funeral expenses and debts are paid, it is my desire that the residue be divided equally, etc.''

In the present case, it will be observed that the testator used the following language: ''5. I give and bequeath unto my beloved wife, Louise McGie Weeks, all the rest, residue and remainder of my estate of whatever kind or nature and wherever located or situate, real, personal or mixed, to have and to hold for her own personal use so long as she shall live, and at her death I direct that whatever remains of said bequest be divided between my son, Marvin F. Weeks, and my daughter, Helen Louise Weeks, share and share alike.''

In the *Johnson* v. *Lehr* case, this court in construing the paragraph, *supra,* from the will, in that case, said: ''The language of this paragraph is unambiguous and clearly devised the unlimited use, with implied power of sale, of all the testator's property, both real and personal, to his wife, Maude Taylor Williams. There is nothing in the clause to indicate that the testator devised a life estate only in the property to his widow with a vested remainder therein to his nephew and to the heirs of his wife to be selected by her. It is true that the testator devised any residue that might not be used by his widow to his nephew and her heirs to be selected by her, but this was far from vesting in the nephew and her heirs a remainder absolute in the estate. Such remainder as they might acquire under the will was contingent upon his widow dying before she used it by sale or otherwise. The widow's deed to appellee under her implied power to sell the property to pay her husband's debts or for her own personal requirements passes or will pass the fee simple title to appellee when accepted by him.

''The implied power of sale is just as effective as an express power to sell would have been. There could not be any question, if express power had been given to sell, that a sale would have passed a fee simple title to any of the property sold by the widow.''

In *United States of America* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807, we said: ''The great weight of authority, however, including this court, supports the rule that a life estate may be created, coupled with power of disposition, and that such power does not change the life estate into a fee for the reason that the power of disposition is not in itself an estate, but is an authority so to do derived from the will. See 17 R. C. L., p. 624, § 13. We so held in *Archer* v. *Palmer,* 112 Ark. 527, 166 S. W. 99, Ann. Cas. 1916B, 573, even though the power of disposition might defeat the rights of the remainderman.''

In determining the testator's intention under paragraph 5, or the meaning of that paragraph, we must bear in mind that at the testator's death, after his widow had paid to each of his children $3,000 in Liberty Bonds, or a total of $6,000, in accordance with bequests to them, there remained eight other bonds above listed of the par value of $8,000. Just what income these bonds produced is not shown. There was also a certificate of stock in a hotel, along with a lot in Rock Island, Illinois, and two lots in the ''New Shop Addition,'' East Moline, Illinois. Since the record here discloses that the real property described in the will is situated in another state, the only property over which the lower court had jurisdiction was the bonds, securities and personal property mentioned in the complaint. *Williams* v. *Nichol,* 47 Ark. 254, 1 S. W. 243. As to the value of this hotel stock and whether revenue producing, the record is silent.

In these circumstances, did the testator intend that his widow should be limited to use only the income, if any, from these eight bonds, three lots and a certificate of stock in a hotel, when he bequeathed unto his ''beloved wife, . . . all the rest, residue and remainder of my estate . . . real, personal or mixed, to have and to hold for her own personal use so long as she shall live''? We do not think that such was his intention. That he did not so intend, we think, is emphasized by the provision that immediately followed, ''and at her death I direct that whatever remains of said bequest be divided between

my son . . . and my daughter . . ." There would seem to be no purpose in the use of this latter provision if the testator had not intended that his widow might use the principal as well as the revenue from the property bequeathed to her for her personal use and needs during her lifetime. Had Mr. Weeks not intended to empower his widow, appellant, to so use all or any part of this property during her life, he could have very easily so provided with such a clause as "at her death, I direct that such property so bequeathed be divided between my son, Marvin F. Weeks, and my daughter, Helen Louise Weeks, share and share alike."

We hold, therefore, that appellant under the terms of the will was given a life estate in the property bequeathed with full power of sale and disposition, for her own personal use and needs during her life, and whatever remains at her death to be equally divided between the two children, *supra*.

For the error indicated, the decree is reversed and the cause remanded with directions to enter a decree not inconsistent with this opinion.

SMITH, McHANEY and McFADDIN, JJ., dissent.

ED. F. McFADDIN, Justice (Dissenting). A lengthy dissenting opinion (elaborating and discussing the points) would serve no useful purpose in this case; but a few lines are proper to indicate my reasons for divergence from the majority:

1. I think the entire case should have been remanded to the Chancery Court to have the evidence developed as to the extent and value of the estate before this court attempted to ascertain the testator's intentions from the circumstances surrounding the testator at the time he executed the will. There was no evidence introduced in this case.

2. In reversing the cause, I think the majority should also have directed the Chancery Court to require the life tenant to file an inventory of the estate, and then her petition for authority to sell such assets as she could

show her necessity required. These precautions should be taken to prevent the life tenant from committing irreparable waste at the expense of the remaindermen.