SNOW WILSON III *v.* MADELINE F. CAMPBELL

5-4517                                    425 S. W. 2d 518

Opinion delivered March 25, 1968

452

*Swift* & *Alexander,* for appellant.

*D. Fred Taylor* and *Ralph E. Young,* for appellee.

LYLE BROWN, Justice. This appeal comes from a judgment for $2,500 awarded the landlord on the basis of a crop rent note executed by the tenant. Appellee, Madeline F. Campbell, was the landlord, and appellant, Snow Wilson III, was the tenant. Wilson challenges the judgment on the ground that he purchased the leased lands at a foreclosure sale and before the annual rent note became due on November 15, 1965.

When Madeline Campbell bought the lands in 1963 by quitclaim deed, there was an outstanding mortgage in favor of Merchants Hotel Supply, Inc., for approximately $40,000. Madeline Campbell leased the lands to Wilson for the year 1965 on a cash rent basis. Wilson executed a note due November 15, 1965, went into possession, and made a crop. That crop was destroyed by hail, and Wilson collected $9,800 crop insurance in August. In February, 1965, Merchants filed a foreclosure suit. The principal defendants were Madeline Campbell's grantors, Ben and Eleanor Flannigan. Ap-

pellant and appellee were made parties, but did not answer. In May 1965 judgment was taken against the Flannigans and a lien was imposed on the lands. No receiver was requested, and crops were not mentioned. It was decreed that all right, title, and interest of appellant and appellee were barred. Tenant Snow Wilson was the successful bidder at the commissioner's sale, which was confirmed on October 8, 1965. Thereafter he held title beyond the due date of the crop note.

The principal question to be resolved is whether Snow Wilson is obligated to Madeline Campbell for the 1965 crop rent or any portion thereof. That problem poses the question as to when the rent accrued. In *Rogoski, Admr.* v. *McLaughlin,* 228 Ark. 1157, 312 S. W. 2d 912 (1958), we adhered to the common law rule that rent does not accrue from day to day, as does interest: "it is considered to accrue in its entirety on the day the payment is due." The common law rule is explained in Tiffany, *Landlord and Tenant,* § 176:

> "Rent is not, at common law, regarded as accruing from day to day, as interest does, but it is only upon the day fixed for payment that any part of it becomes due. The result of this principle is that, ordinarily, the person who is on that day the owner of the reversion is entitled to the entire installment of rent due on that day, though he may have been the owner of the reversion or rent but a part of the time which has elapsed since the last rent day. Conversely, one who has been the owner of the reversion or rent during a part of that period can claim no portion of the installment unless he is such owner at the time at which the installment is payable by the terms of the lease. The general rule in this regard is ordinarily expressed by saying that rent cannot be apportioned as to time."

The effect of the foreclosure on the lease was to extinguish it. The lease was subject to the mortgage. Lessor and lessee were made parties to the foreclosure

and the foreclosure decree barred appellant and appellee from any interest in the land. It may well be said that the lease therefore disappeared. Glenn on *Mortgages,* § 181.1, states it thusly: "The mortgagor has no claim under it [lease], and the only claim that remains is on the tenant's behalf, for breach of his landlord's covenant of quiet enjoyment. This breach took place when foreclosure came as a result of the landlord's default upon the underlying mortgage; but apart from that, the lease is dead for all operative purposes." To the same effect see McAdams on *Landlord and Tenant,* 5th Ed., § 76.

What we have said applies to the facts in the case at bar. We have a defaulting landlord who holds an annual rent note due near the end of the year; before the accrual date there is a foreclosure in which a receiver is not requested and no claim is made by the mortgagee as against the crops. The tenant purchases at the foreclosure sale, as is his right under such holdings as *Ray* v. *Stroud,* 204 Ark. 583, 163 S. W. 2d 173 (1942). (In that case we held that the tenant's purchase could be set up as a defense in a subsequent suit by the landlord for rents.)

As between grantor and grantee in a private sale of land, where the property is rented at the time of conveyance, rents which are not due until after the conveyance go to the grantee unless reserved in the deed. *Latham* v. *First National Bank,* 92 Ark. 315, 122 S. W. 992 (1909). In the case at bar the commissioner's deed is not in the record; however, it is clear from an examination of the foreclosure decree that the commissioner made no reservation of rents in his deed. We think the two situations are analogous.

To sustain the award of the chancellor, appellee first contends that the entire amount of the judgment should be affirmed on the theory that the due date of the note was accelerated by the destruction of the crop in August. It is her contention that the loss was due to

an unforeseen development which enabled her tenant to collect the insurance proceeds from the destroyed crop. She theorizes that the landlord should have a lien on the insurance proceeds. We cannot agree with that contention. No authorities were cited to support it, and no attempt was made to show that the tenant became unjustly enriched as a result of the collection of crop insurance. We are unable to find a case in our own jurisdiction which would approve or disapprove her theory; however, the case of *Roesch* v. *Johnson*, 69 Ark. 30, 62 S. W. 416 (1900), would indicate that appellee's contention is not tenable.

Alternatively, appellee insists that the rent should be apportioned. She relies principally on *Deming Investment Co.* v. *Bank of Judsonia*, 170 Ark. 65, 278 S. W. 634 (1926); *Purvis* v. *Elder*, 175 Ark. 780, 1 S. W. 2d 36 (1927); and *Free* v. *Harris*, 183 Ark. 233, 35 S. W. 2d 603 (1931).

*Deming* and *Purvis* are cases in which, pursuant to foreclosure, a receiver was appointed under the provisions of Ark. Stat. Ann. § 36-113 (Repl. 1962). The provision for appointment of a receiver was a part of our Civil Code. Our decisions are replete with cases prior to *Deming* and *Purvis* in which apportionment of rents was upheld in situations where the trial court appointed a receiver.

Section 36-113 is the tool used by trial courts to appoint a receiver in foreclosure and thus divert rents and profits of mortgaged premises from the person lawfully in possession. It gives the plaintiff in a foreclosure an equitable lien on the accrued and unpaid rents. As was stated in *Bank of Weiner* v. *Jonesboro Trust Co.*, 168 Ark. 859, 271 S. W. 952 (1925): "The rents and profits on the lands, after their sequestration by the institution of this suit and the appointment of a receiver, stand in the same category as the land itself."

This brings us to a comment on the holding in *Free v. Harris, supra.* A secondary issue in that case was the disposition of rents. There was a foreclosure without the appointment of a receiver and this court approved an apportionment of the crop rents, 7/12ths of the annual rent being awarded to the mortgagor and 5/12ths to the purchaser at the foreclosure sale. In approving that proration this court relied on the *Deming* and *Purvis* decisions. We have examined the briefs in *Free v. Harris* and find that Mrs. Harris argued for apportionment, citing extensively from *Deming* and *Purvis.* Mr. Free's argument against apportionment consisted of one paragraph containing a single sentence at the end of the brief. Preceding that short response were eight pages of argument meeting the points raised in the trial court. We surmise that Free's brief treatment of the subject led this court into error in relying on *Deming* and *Purvis,* those being cases in which receivers were appointed pursuant to Ark. Stat. Ann. § 36-113.

The holding of our court in *Rogoski, supra,* at least by inference, substantially nullified the holding in *Free v. Harris.* This is because the two holdings cannot be reconciled. We do not believe the common law rule governing accrual of rents should be abandoned, which would be the effort of following *Free v. Harris.*

Reversed and dismissed.