[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Diane Huxley ("Diane") seeks a declaratory judgment setting forth the rights and other legal relations of the beneficiaries with respect to 219 Maple Avenue, Cheshire, Connecticut. The defendants Richard Huxley ("Richard") as executor and individually and Brent Huxley ("Brent") are her brothers and beneficiaries under the will of their mother Marjorie C. Huxley ("Marjorie"), who died on April 22, 1997.
Marjorie executed her will February 14, 1985. The will (Exhibit 1) was admitted to the Probate Court for Cheshire on July 25, 1997, more than three months after death.
Although the complaint seeks a declaratory judgment for the interpretation of Article III, IV and V, the parties, Diane and Richard as Executor concede the only issue for this court to decide is the interpretation and effect of Article IV which provides as follows:
 ARTICLE IV
If at the time of my death, I am the owner of the premises located at CT Page 13585 219 Maple Avenue, Cheshire, Connecticut, then I give, devise and bequeath said premises to my son, BRENT HUXLEY, provided that within three (3) months of my death, he pays over to my daughter, DIANE CARBONE, the sum of Forty Thousand ($40,000.00) Dollars. If my said son, BRENT HUXLEY, fails to pay over to my said daughter, the said sum of Forty Thousand ($40,000.00) Dollars, then my Executor is directed to sell said premises and divide the net proceeds from said sale equally between my said daughter, DIANE CARBONE and my said son BRENT HUXLEY.
It is further to be noted that, the individuals Brent and Richard were defaulted in this case and the named defendant Richard in his capacity as Executor for this estate is represented by counsel.
The counsel for this estate in the post trial brief at page 9 argues that the decedent's Last Will and Testament leads to the conclusion that in "light of the testator's intent of this specific bequest of Maple Avenue in Article IV and the subsequent residuary clause in Article V that Article III should be disregarded.
Plaintiff in her post trial brief argues "The primary objective in construing wills is to ascertain and effectuate the testators intent" (citations omitted).
Under a will construction the instrument must be read as a whole to determine the general plan of disposition and the specific construction problems.
The meaning of the words used by the testatrix. . . . is not to be deduced by extracting and examining the words in artificial isolation.Lockwood v. Killian, 179 Conn. 62, 70, 425 A.2d 909 (1979); Colonial Bank Trust Co. v. Stevens, 164 Conn. 31, 36-37, 316 A.2d 768 (1972); see Adams v. United States, 401 F. Sup. 1142, 1151 (D.Kan. 1975); Read v. Legg, 493 A.2d 1013, 1016 (D.C.App. 1985); First National Bank ofFlorida v. Moffett, 479 So.2d 312, 313 (Fla.App. 1985). The words must be interpreted in light of their context and with reference to the will in its entirety. Dei Cas v. Mayfield, supra; Hartford National Bank Trust Co. v. Thrall, supra; see Estate of Bruning v. C.I.R., 888 F.2d 657,659 (10th Cir. 1989); Estate of McMillan v. C.I.R., 670 F.2d 788, 791
(8th Cir. 1982).
"`Not only must all parts of the will be considered, but each and all its provisions should, so far as possible, be harmonized and given effect.'" "Hartford Nationd Bank Trust Co. v. Thrall, supra, 506; seeIndependence Bank Waukesha (N.A.) v. United States, 761 F.2d 442, 444
(7k" Cir. 1985); Greene v. United States, 447 F. Sup. 885, 897
(N.D.Ill. 1978); Connecticut General Life Ins. Co. v. Peterson, CT Page 13586442 F. Sup. 533, 537 (W.D.Mo. 1978); Estate of Sweet, 519 A.2d 1260,1264 (Me. 1987). "A court may not stray beyond the four corners of the will where the terms of the will are clear and unambiguous." In re Estateof Tashjian, 375 Pa. Super. 221, 229-30 n. 3, 544 A.2d 67 (1988); seeConnecticut Junior Republic v. Sharon Hospital, supra, 9.
This court concludes that the testatrix never wanted Article III to control the disposition of all the assets of the estate.
Prior to her death, Marjorie lived with Diane at 1311 Cheshire Street. Marjorie maintained her residence at 1311 Cheshire Street (Exhibit B) when Marjorie went to a convalescent home.
When the will was discovered and filed with the Probate Court the provisions in Article IV for payment of the $40,000 by Brent to Diane within 90 days of death could be given no effect. All three beneficiaries under the will testified that the will was not discovered until the end of, or after the 90 day time limit for payment of the $40,000 by Brent under Article IV.
In a will construction suit the court should give effect to the testator's intent (citations omitted). The will must be read as a whole to discover what the testatrix intended. Since this court agrees that Article III should be eliminated, "our primary objective in construing paragraph (Article IV) of the testatrix's will, is to ascertain and effectuate her intent (citations omitted). In searching for that intent we look first to the precise wording employed by the testatrix in her will; for the meaning of the words as used by the testatrix is the equivalent of her legal intention — the intention that the law recognizes as dispositive. The question is not what [S]he meant to say, but what is meant by what [S]he did say [citations and internal quotations omitted] Canaan National Bank v. Peters, 217 Conn. 330,335-336.
All three beneficiaries testified. Brent testified that he was the youngest of the three children and that his mother the testatrix told him that he was to get the Maple Avenue property. The other two witnesses indicated that their mother had never told them anything different. (See Plaintiffs Post Trial Brief at page 6).
The plaintiff however next argues the issue is whether the payment of $40,000 was made pursuant to Article IV within the ninety days or whether the time requirement was waived so that the executor would have to sell the property at 219 Maple Avenue and to split the proceeds equally between Brent and Diane. CT Page 13587
The court has already determined that the 90 day time period can not be given any effect in this case.
On August 19, 1997 and within the 90 day period after the discovery of the will, Attorney David Wayne Winters, mailed to all the beneficiaries a letter enclosing a stipulation and mutual agreement for the distribution of the estate and the method by which Brent would pay the $40,000 as required by Article IV.
The agreement was never signed by the parties. Attorney Winters did not appear at trial and testify.
On March 3, 1998, the executor filed an inventory in the Cheshire Probate Court (Exhibit 2) showing that the assets of the estate as follows:
Item No.
 1. Real Estate — 219 Maple Ave., Cheshire, CT (see exhibit A attached) $136,000.00
 2. Real Estate — 1211 Cheshire Street, Cheshire, CT (see exhibit B attached) $123,000.00
3. Bass PLC — 260 shares — Common $6,695.00
 4. Accrued Interest — Robert A. Huxley Trust U/A 12/12/75 $112.26
 5. Furniture, furnishings and miscellaneous Tangible personal property $6,000.00
6. Bank of Boston — uncashed teller's check $632.00
Total $272,439.26
On May 5, 1998 the executor filed a Succession Tax Return (Exhibit 3) setting forth the proposed respective taxable interests. The proposed estate tax return (Exhibit 3) gave effect to the distribution of 219 Maple Avenue allocating $96,000 for Brent and $40,000 for Diane pursuant to Article W.
Diane testified she could not remember if she received a copy of the letter and the proposed agreement for mutual distribution which was within the 90 day period at the law offices of the estate's attorney. CT Page 13588
Diane only testified that she never agreed to accept payment of the $40,000 by Brent assigning his one-third interest in the other property owned by the decedent. Further that she never received legal tender of the $40,000 to the date of trial. Brent relies on his willingness to perform the condition precedent by his verbal offer made at the meeting of August 17, 1997, to give Diane his one-third of his interest in the property owned by the decedent at 1311 Cheshire Street, Connecticut. Diane had lived at that property for 37 years.
Diane lived at 1311 Cheshire Street for five years when Marjorie went into a convalescent home. Diane however had paid all charges up to the date of death and no other claims have been made against her.
Richard testified he received a copy of Exhibit 4 and that he witnessed the offer made by Brent to Diane at the meeting.
Brent testified that they had come to a verbal agreement at attorney Winter's office that he had offered Diane his one third share of 1311 Cheshire Street and that it was a hair over the $40,000 payment under Article IV, but that nothing was ever agreed upon in writing or that Diane ever signed the agreement attached to Exhibit 4.
Under the principles of law in Canaan supra the reviewing of the words used by the testatrix is the equivalent of her legal intention. The question is not what she meant but what she said.
Brent did not perform the condition precedent in the will as specifically provided. No legal tender of $40,000 was made or accepted by Diane. There was no binding agreement to settle the estate as the Executor attempted to do by filing the forms. (Exhibit 2 and 3).
Accordingly the court concludes that the operation of Article IV requires that the property at 219 Maple Avenue be sold and that the net proceeds from the sale be equally divided between Diane and Brent Huxley.
The court has examined the affidavit of Attorney Lewis who represented the plaintiff in this matter and not the estate. The estate argues that under Connecticut General Statutes § 52-251 that attorney fees should not be paid by the estate since it was brought by one of the beneficiaries and not a fiduciary as set forth by statute. The court has equitable powers under Connecticut General Statutes § 52-251 to allow attorneys fees. In this case under the circumstances attorneys fees are to be paid to Attorney Lewis out of the proceeds of the sale of 219 Maple Avenue.
The court allows attorneys fees of $7500.00 pursuant to Connecticut CT Page 13589 General Statutes § 52-251 (See Hartford Connecticut Trust Co. v.Hartford Hospital, 141 Conn. 163, 175) to be paid out of the proceeds from the sale of 219 Maple Avenue, Cheshire, Connecticut.
Frank S. Meadow, J.T.R.